OFFIT KURMAN P.A.
590 Madison Avenue, 6th Fl.
New York, NY 10016
Telephone: (212) 380-4106
Facsimile: (212) 545-1656
Albena Petrakov

Counsel to the Foreign Representative

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>VANMOOF B.V.,<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 23-42965-jmm |

**DECLARATION OF JAN PADBERG IN SUPPORT OF MOTION FOR (I)
RECOGNITION OF FOREIGN PROCEEDING,
(II) RECOGNITION OF FOREIGN REPRESENTATIVE,
AND (III) RELATED RELIEF UNDER
<u>CHAPTER 15 OF THE BANKRUPTCY CODE</u>**

I, Johannes A.H. Padberg, partner of HVG Law LLP, a law firm located in Amsterdam, the Netherlands, and a lawyer admitted to the practice of law in the Netherlands, hereby declare under penalty of perjury under the laws of the United States of America as follows:

1. I am over the age of 18 and, if called upon, could testify to all matters set forth in this statement, except for those portions specified as being otherwise.

2. I am making this Declaration in accordance with section 1515 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. On July 17, 2023, I and my partner Robin.P.A. de Wit were appointed to act as trustees in the bankruptcy proceedings of VANMOOF B.V. in the Amsterdam District Court, Private Law Division (the "Dutch Bankruptcy Proceeding") pursuant to the Bankruptcy Act of the Netherlands and Article 3 of EU Regulation 2015/848 of the European Parliament and the Council of the European Union,

4. I submit this declaration in support of the (a) *Official Form 401 Petitions* (collectively, the "Petitions"), and (b) *Motion for (I) Recognition of Foreign Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Motion") filed contemporaneously herewith.

4. I have been practicing law for almost 30 years in the Netherlands and have more than 26 years of experience in advising global clients on international company, corporate, financing and restructuring law matters in a multi-disciplinary context. I obtained my law degree from the University of Amsterdam in 1993. In 2002 I obtained a postgraduate degree from Grotius Academy in the area "Insolvency" (incl. financing and securities) and a post-doctoral in Financial Economy for Bankruptcy Trustees in 2009. I have been recognized as a leader in my practice area by *The Legal 500*, and other important legal directories. I am a recognized expert in bankruptcy in the Netherlands, and I am fully familiar with the Dutch Bankruptcy Act and bankruptcy proceedings.

5. To assist the Court's consideration of the First Day Motions, I submit this declaration comprising matters that are statements of legal opinion and/or statements of fact. Where the matters stated in this declaration are statements of legal opinion, such statements reflect Dutch law based on my education and years of experience practicing in the Netherlands. Where

the matters stated in this declaration are statements of fact, they are either: (a) based on my personal knowledge, and are known to me to be true and accurate, or (b) if not within my personal knowledge, are derived from documents and/or information supplied to me by or on behalf of the Debtor, and are true to the best of my knowledge, information and belief.

6. The Debtor, along with other related entities and affiliates (collectively, the "VANMOOF Group"), are part of a larger Dutch corporate group. The Debtor is a global bicycle manufacturer headquartered in the Netherlands and founded in 2005 in Amsterdam by brothers Taco and Ties Carlier. VANMOOF started with a line of traditional bikes later moving exclusively to e-bikes with the goal to create the world's best bikes for city commuting. It has re-imagined how a bike should work in the cities of tomorrow by stripping out unnecessary parts, improving the essentials, and integrated technology. The Debtor has received many accolades for its unique solutions, including a "Best Product Design" award from Fast Company's 2015 Innovation by Design Awards program, and a prestigious Red Dot design award. In addition to Amsterdam, VANMOOF Group has teams in more than 20 cities worldwide, including New York, Berlin and Taipei, Paris and London.

7. As of the commencement of the Dutch Bankruptcy Proceeding, (a) the Debtor directly employed approximately 118 employees and its affiliate VANMOOF Global Support B.V. (also in bankruptcy) employed approximately 280, all of whom were based in the Netherlands, and (b) the broader VANMOOF Group (including the Debtor) directly and indirectly employed approximately 700 employees worldwide, with approximately 60 % based in the Netherlands.

8. The Debtor manages the worldwide operations of the VANMOOF Group and is headquartered in Amsterdam. The VANMOOF Group operational and economic

activities are concentrated in the Netherlands. The Debtor sells its e-bikes both online and in its own brand stores in more than twenty cities worldwide. The Debtors markets, distributes and sells its product in the United States through its wholly owned subsidiary, VANMOOF USA Inc which operates a brand store in Brooklyn. The research and development department is mainly located in the Netherlands and the e-bikes are produced by factories in Taiwan.

9. The VANMOOF Group was mainly financed by certain lenders (the "Convertible Noteholders') for which TriplePoint Venture Growth BDC Corporation acts as collateral agent (the "Financing Agreement"). The Financing Agreement is governed by the law of the State of California. As of the commencement of the Dutch Bankruptcy Proceeding, the total funded indebtedness under the Financing Agreement was in the amount of approximately EUR 77.9 million. The Debtor is co-bonded under the financing obtained by TriplePoint Venture Growth BDC Corporation. In addition, the VANMOOF Group carries trade debts approximately in the amount of EUR 50.6 million The Debtor alone owes approximately EUR 5 million to trade creditors and approximately EUR 1.3 million to other creditors. The tax obligations of VANMOOF Group amount to approximately EUR 15.3 million, of which 12.1 million are with the Dutch Tax Authorities.

10. There are also substantial intercompany debts, including Debtor's obligations of approximately EUR 208 million to VANMOOF Global Holding B.V. and approximately EUR 25 million to VANMOOF Global Support B.V. These two companies have also been declared bankrupt by the District Court in Amsterdam.

11. The VANMOOF Group has been in financial trouble due to problems with the supply of parts, delays in the launch of two new e-bikes and technical problems with two

existing e-bike models. As a result, VANMOOF Group experienced cash flow problems and had to raise additional financing.

12. In the fall of 2022, the VANMOOF Group successfully raised additional financing from the Convertible Noteholders, which allowed it to address its cash flow problems for a short period of time. However, at that time it was clear that additional financing would be needed to bridge the gap between the Group's liabilities and revenue from the sale of the new models.

13. Against the above backdrop, the Debtor had to undertake a variety of measures to preserve its going-concern value and provide the Debtor with additional liquidity runway, including cost-saving measures, including reduction of its workforce and closing unprofitable brand stores. These measures did not eliminate the need for new funding. VANMOOF Group then sought new investments and thus a structural solution, including by engaging Goldman Sachs. In the interim, TriplePoint Venture Growth BDC Corporation has expressed its willingness to provide additional financing, totaling EUR 42.9 million. This has led to VANMOOF Group being able to launch two budget models, which were essential for the VANMOOF Group to realize cash flow.

14. Until very recently, there were several concrete options for VANMOOF Group to obtain additional financing or an acquisition to ensure the continuation of its operation. Very recently, it has been determined that obtaining financing or an acquisition in the short term is not realistic. The debtor foresaw that this would prevent it from paying its payable debts in the short term. Operationally, the VANMOOF Group attempted to resize its businesses to reflect operational reductions. However even with such operational initiatives and despite having valuable assets, such as intercompany receivables from VANMOOF USA inc. of EUR 31.8 million, from

VANMOOF DE GmbH from EUR 2.8 million and from VANMOOF UK Ltd. from EUR 1.9 million, the Debtor did not have the liquidity to meet its short- and medium-term financial obligations.

15. In addition, there is pending litigation in the New York Supreme Court against the Debtor and its wholly owned subsidiary – VANMOOF USA Inc. (the "New York Litigation"). The New York Litigation is a personal injury action. A Notice of the Dutch Bankruptcy Proceeding was provided on July 31, 2023. It is the Foreign Representatives' understanding that absent the commencement of a case under chapter 15 of the Bankruptcy Code, plaintiff's counsel in this action vigorously contests the application of the Dutch Stay to the New York Litigation.

16. I and my partner, each of us authorized to act individually on behalf of the Debtor, are engaged in ongoing, extensive efforts to investigate and preserve the assets of the Debtor, including the coordination of the various legal, forensic and accounting teams to the extent needed, directing and coordinating the steps to take control of the subsidiary companies, directing and coordinating steps to take control of any other assets and in taking such other action as is necessary to ensure the smooth administration of the estate.

17. Pursuant to Article 20 of the Bankruptcy Act the declaration of bankruptcy triggers a general judicial attachment of all of the debtor's assets for the benefit of its creditors. The recoverable assets are all assets where a creditor can recover his claim from the debtor (Article 3:276 of the Dutch Civil Code). Accordingly, the shares that VANMOOF B.V. holds in VANMOOF USA inc. are subject to the Dutch Bankruptcy Proceeding. Once the debtor is declared bankrupt, there can be no further modification of assets or rights (the fixation principle).

From the date of bankruptcy, the trustee shall have access to and manage the assets belonging to bankruptcy estate according to Article 68 of the Bankruptcy Act. The management of the bankrupt company is no longer authorized to carry out acts of management or enter into any transactions with regard to the assets belonging to the bankruptcy. The trustee is in charge of managing and liquidating the bankrupt estate. After the commencement of the bankruptcy, the statutory director(s) of the bankrupt company may not perform any acts on behalf of the bankrupt legal entity. The director is no longer authorized to bind and represent the legal entity towards third parties and to bind the company. Therefore, all actions that affect the assets of the bankrupt estate are under the management of the trustee.

18. In certain cases, the trustee of a bankrupt parent company like VANMOOF B.V. has powers that he can exercise in the subsidiary (VANMOOF USA inc.). The trustee derives these powers from the fact that he is a shareholder of that subsidiary. The powers can only be exercised insofar as it is appropriate for the proper management of the estate and for the benefit of the estate. Property interests do not only refer to a monetary interest of the parent company. The trustee therefore has an interest in ensuring that the assets are preserved in the USA. Without a stay, the assets in the USA can de damaged.

19. Immediately after the bankruptcy declaration, the trustee generally needs time to review and analyze books and records of the company, to investigate assets and to understand the financial condition of the Debtor so he or she can determine the most efficient approach to maximizing value for the creditors. To enable the trustee to complete his analysis and to potentially allow the continuation of the debtor or the going concern sale of valuable business units, the Court may impose a so-called "cooling-off period", during which third parties cannot exercise their right to recover property belonging to the estate or claim property under the control

of the trustee pursuant to Article 63a of the Bankruptcy Act. The cooling off period is set for a maximum of two months with the possibility of an extension for the same period. In the bankruptcy of VANMOOF B.V., a cooling-off period of two months has been declared until September 13, 2023. The Foreign Representatives are likely to apply for an extension of the cooling off period by additional two months.

20. Any proceeding that has been commenced against the bankrupted entity prior to bankruptcy and such procedure is intended to fulfill an obligation from the estate, will be suspended by operation of law pursuant to Article 29 of the Bankruptcy Act. The rationale behind this is that claims that arose prior to bankruptcy can only be submitted for verification. With regard to the claim ability of a claim for damages in tort, Dutch law in principle applies that the claim is due and payable at the time when the damage arises. Article 25 of the Bankruptcy Act provides that a claim against the estate can only be acquired by acting against the trustee, not by acting against the bankrupt. The Bankruptcy Act provides that if an action relating to rights or obligations relating to the estate is brought not against the trustee but against the bankrupt, the plaintiff's claim is admissible in the bankruptcy, but a judgment against the company has no legal force against the estate Article 25 (2).

21. I have reviewed and been informed of the "foreign proceeding" and "foreign representative" requirements, necessary for recognition of a proceeding under chapter 15 of the Bankruptcy Code. Based upon my experience and understanding of the relevant laws of the Netherlands, it is my belief that the Dutch Bankruptcy Proceeding qualifies as a foreign proceeding "under a law relating to insolvency or adjustment of debt" pursuant to section 101(23) of the Bankruptcy Code.

22. The Amsterdam District Court is a court of general jurisdiction that oversees insolvency proceedings. The proceeding is under the supervision of the Dutch court as Ms. W.M. de Vries LL.M., a judge of the Amsterdam District Court was appointed as bankruptcy supervisory judge. The District Court in Amsterdam explicitly found that there was no prospect that the Debtor would be able to satisfy its creditors over time and that it had stopped making payments, ordered the bankruptcy of VANMOOF B.V. and appointed the Foreign Representatives as Trustees. See a certified copy of the order annexed hereto Exhibit 1.

23. The Dutch Bankruptcy Proceeding is a collective judicial proceeding relating to insolvency or adjustment of debt in that it administers the claims of all creditors whose claims are being addressed in a single proceeding. The Dutch Bankruptcy Proceeding is pending in a foreign country under a law relating to insolvency, the Dutch Bankruptcy Act. The proceeding is intended to protect the Debtor so that it may continue to operate and pursue an orderly liquidation including any transactions that maximize the recovery for the creditors. The Foreign Representatives are the proper "foreign representatives" of the Dutch Bankruptcy Proceeding, as they were appointed to administer the bankruptcy proceeding thereby satisfying sections 101(24) and 1517(a)(2) of the Bankruptcy Code. 11 U.S.C. § 101(24).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is, to the best of my knowledge, information, and belief, complete, true and correct.

Executed on this 18th day of August 2023
in Amsterdam, the Netherlands

_/s/_____
JOHANNES PADBERG

4883-6031-6281, v. 1